UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| W&D IMPORTS, INC. d/b/a WILLIS HONDA and DAVID DAVIS,<br><br>                 Plaintiffs,<br><br>– *against* –<br><br>DON LIA; MOBILE MANAGEMENT, LLC; N.R. AUTOMOTIVE, INC.; MICHAEL SAPORITO; JESSE ARMSTEAD; ALLSTAR MOTORS OF L.I., INC.; ALL STAR MOTORS, LLC d/b/a HAMILTON HONDA; AMERICAN HONDA MOTOR CO., INC.; and DOES 1 through 7,<br><br>                 Defendants. | Civil Docket No. 11-cv-4144 (SJF/ETB)<br><br>Hon. Sandra J. Feuerstein, U.S.D.J.<br>Hon. E. Thomas Boyle, U.S.M.J. |

**PLAINTIFFS' FURTHER OPPOSITION TO THE MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS MICHAEL SAPORITO, JESSIE ARMSTEAD, ALLSTAR MOTORS OF L.I., INC. AND ALL STAR MOTORS, LLC d/b/a HAMILTON HONDA**

BRESSLER, AMERY & ROSS
A Professional Corporation
17 State Street
New York, New York 10004
(212) 425-9300
*echase@bressler.com*
Attorneys for Plaintiffs, W&D Imports, Inc.
  d/b/a Willis Honda and David Davis

On the Brief:
    Eric L. Chase
    Ronald J. Campione

## **TABLE OF CONTENTS**

**Page**

THE RECENTLY-PROVIDED AGREEMENTS CITED AND DESCRIBED IN
LIA'S VERIFIED COMPLAINT FURTHER VALIDATE PLAINTIFFS'
CLAIMS. ..................................................................................................................................1

CONCLUSION.............................................................................................................................5

## THE RECENTLY-PROVIDED AGREEMENTS CITED AND DESCRIBED IN LIA'S VERIFIED COMPLAINT FURTHER VALIDATE PLAINTIFFS' CLAIMS.

By the Court's permission, Plaintiffs' further response to the Saporito Defendants' motion to dismiss addresses the significance of Defendant Lia's 2003 Agreement with Saporito and Armstead, and his 2006 Agreement with Saporito. *See* ECF Doc. No. 52-1. These documents, not filed until the Saporito Defendants' Reply submission,[1] on their face and for purposes of a dismissal motion, establish the RICO Defendants' conspiratorial framework. With the notarized signatures of Lia, Saporito, and Armstead, the agreements also belie rampant mischaracterizations in the Saporito Defendants' Reply. The gravamen of the arguments herein also applies to Armstead's separate Reply in ECF Doc. No. 53.

The 2003 Agreement

In specific terms, the sworn and notarized 2003 Agreement among Lia, Saporito, and Armstead defines and sets in motion the unlawful scheme described at length in the Complaint. The Agreement starts with the statement that "Jessie and Mike will be offered a Honda Automobile Sales Agreement. . . ." ECF Doc. No. 52-1 at 4 (emphasis added). It details their agreement to Lia's predominant role as manager, 75% owner, and recipient of 75% of enterprise distributions; it prescribes and catalogues the breathtaking pretenses they foisted upon "the Honda Agreements": (a) Armstead as the majority 51% owner (who, by the secret Agreement, is to receive 5% of distributions); and (b) Saporito as a 49% owner (to receive 20%). The reality of the Agreement is that Lia, who is, apparently, not to be publicly disclosed at all to American Honda, is the centerpiece and ringmaster of the scheme. The 2003 Agreement's terms leave no room for ambiguity on, *inter alia*, the following points:

---

[1] By letter to the Court dated November 18, 2011, the firm of Saul Ewing, counsel for the Saporito Defendants, implies that Plaintiffs were not truthful in informing the Court that they had not previously seen the Agreements. To a certainty, counsel at Saul Ewing knew that Plaintiffs had not seen the Agreements, because their early requests for copies from Saul Ewing were ignored.

- Although "[t]he Honda Agreements" are to indicate a 51% - 49% Armstead-Saporito stock ownership, the Agreement assures that Lia is effectively to be the 75% owner of the business. ECF Doc. No. 52-1 at 4.

- "Don (or an entity owned by him) will acquire the real estate . . . and will build a Dealership facility in compliance with AHM requirements." *Id.*

- "Don will advance to Jessie and Mike the total required capital investment for the Honda Dealership." *Id.*

- "<u>Any distributions from the Company shall be 75% to Don, 20% to Jessie and 5% to Mike.</u>" *Id.* (emphasis added).

- Don holds a right of first refusal for the purchase of Jessie's and Mike's shares of stock to be sold by them. *Id.* at 5.

- "Similarly if Don desires to sell his seventy-five percent <u>interest</u>, he shall provide Jesse and Mike with a copy of a bonafide written Agreement. . . ." *Id.* (emphasis added).

- "Don shall have the right to offer for sale <u>one hundred percent</u> of the dealership." *Id.* (emphasis added).

- "[I]f Don desires to sell his <u>seventy-five percent interest</u> . . ., Jessie and/or Mike shall have a right of first refusal on the same terms and conditions as . . . for Don." *Id.* (emphasis added).

- "All management decisions regarding the Dealership shall be made by Don . . . . All management decisions made by Don shall be in conformity with generally accepted industry standards, including but not limited to the compensation to be paid to all employees of the Dealership, <u>including compensation to be paid to Mike.</u>" *Id.* (emphasis added).

- "At Don's written request, Jessie and Mike agree to enter into and to submit to AHM a 'Buy-Sell' Agreement wherein, subject to the approval of AHM, Jessie shall sell to Don, or his designee, 31% of his 51% ownership interest and Mike shall sell to Don, or his designee, 44% of his 49% ownership interest wherein Don shall thereafter be recognized by AHM as the owner of 75% of the ownership of the Dealership, with AHM recognizing Jessie as then owning 20% and Mike then owning 5%. <u>There shall be no actual consideration owned [sic] by Don to Jessie or Mike for this transaction.</u>" *Id.* at 6 (emphasis added).

- "In the event, during the five year period commencing on the date herein, Jessie acquires a financial interest in any other franchised new car dealership located in New York, Connecticut, New Jersey, Delaware, Maryland, Virginia

or Washington, D.C. without Don's prior written consent Jessie agrees, upon written notice from Don, to sell to Don his entire interest in this Honda Dealership at the price referred to in this paragraph." *Id.* at 5.

This scheme, as formulated by Lia, Saporito, and Armstead, was simple and audacious – and entirely secret until Lia filed his Verified Complaint. Saporito and Armstead were to – and did – submit documents to American Honda as if there were a 51-49 ownership split between Saporito and Armstead only. But Lia was in charge; he was to make "all management decisions." He was to – and did – acquire the real estate.[2] He was to receive 75% of all dealership distributions; upon his "written request," Saporito and Armstead would sign over to him – without consideration owed – sufficient stock interest so that he would attain, officially, 75%. The concept was merely to consummate openly what had been accomplished in secret. In that "transaction," Lia was to owe no "actual consideration." That telling observation comports with the reality that – as among these three conspirators – Lia already owned 75%, and would owe nothing further in conforming a "Buy-Sell" to the existing, but secret, enterprise.

Yet the Saporito Defendants argue in their Reply that the 2003 Agreement proves Lia's non-interest. They say, for example:

- Point Heading: "Lia Never Had An Ownership Interest In All Star." Saporito Defs.' Reply, ECF Doc. No. 52 at 12.

- "The 2003 Memorandum of Understanding therefore does nothing more than provide a mechanism whereby Lia could have attempted to obtain an ownership interest." *Id.* at 13.

- "The 2003 Memorandum of Understanding further establishes that Lia had no interest in the franchisee/dealership. . . ." *Id* (emphasis added).

- "In short, Lia [in his Verified Complaint] alleges that he was never given the opportunity to pursue an interest in All Star. The 2003 Memorandum of

---

[2] Saul Ewing represented Lia in certain relevant real estate transactions – even into 2005. That was while it also represented Saporito and Armstead. As evidence becomes available, Saul Ewing will have to answer to questions about its knowledge of the unlawful scheme, and whether it knowingly advocated positions that were not supported by facts.

Understanding therefore accurately conveys the division of ownership that subsequently was included in the application, and which was presented to the New Jersey tribunals." *Id.*

In sum and substance, the Saporito Defendants try in their Reply brief to retail a delusional reading of the *very* secret Memorandum of Understanding,[3] in which they plotted a separate and distinct agreement from what was provided to American Honda.[4] The *raison d'etre* of the Agreement was to memorialize two alternative universes – one, a meticulously planned fraud, and, the other, a hidden reality. According to Lia, in his Verified Complaint, he acted in furtherance of the scheme as the sole financier of the entire project. The 2003 Agreement provides that Lia, Saporito, and Armstead will be bound by the terms of their secret commitments, even while ostensibly presenting a false façade for American Honda and the world. Unambiguously, the 2003 Agreement confirms for Lia certain identified rights – the right to be paid as a first priority, the right to manage the dealership, the right to 75% of the stock, with no "actual consideration owed." In addition, the contemplated transaction whereby Lia would "become" an owner of the business, calls for him to pay <u>nothing</u> in addition to what he has already invested. Further, contrary to Defendants' reply brief, the 2003 Agreement expressly provides for Lia's "interests" in the Hamilton Honda Dealership.

The 2006 Agreement

According to Lia's Verified Complaint, he commenced the process to have "his attorney draft a letter for Saporito to sign (the "2006 Agreement"), reaffirming his and Armstead's obligations under the 2003 Agreement, and acknowledging that Lia had been the Project's sole

---

[3] The Memorandum calls for confidentiality agreements. *Id.* at 5.
[4] The Saporito Defendants do not at all address that the 2003 Agreement was never provided to American Honda or to the parties in the New Jersey Administrative Action. Indeed, their past sworn lies to the effect that Lia had no past, present or future interest in the dealership are indisputably clear when juxtaposed with the Agreement.

source of funds." *Lia v. Saporito*, Civ. Action No. 2:11-cv-03621-SJF-ETB (July 27, 2011), ECF Doc. No. 1 (Lia Verified Complaint ¶ 36).

The 2006 Agreement contains the paragraph quoted by Lia, and expressly refers to the realty upon which the dealership was built. This letter agreement between Lia and Saporito further refers and confirms to their "business agreement" in which Lia would secretly finance the purchase of the real estate upon which the Hamilton Honda dealership operates. ECF Doc. No. 52-1 at 8.

By the time of the November 2006 Agreement, Lia had been deposed, and Saporito and Armstead had testified in the administrative matter. All three of these confederates denied any of the obligations, interests or ownership rights asserted and memorialized in the 2003 and 2006 Agreements.

## CONCLUSION

The 2003 and 2006 Agreements corroborate Lia's characterizations in his Verified Complaint, and they obliterate the Saporito Defendants' assertions that Lia had no interest in Hamilton Honda.[5] Singly and together, these agreements buttress the solid foundation of all counts of the Complaint. The dismissal motions should be denied.

DATED: November 23, 2011
1402806

ERIC L. CHASE, ESQ.
BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York 10004
(212) 425-9300
echase@bressler.com
Attorneys for Plaintiffs, W&D Imports, Inc.
  d/b/a Willis Honda and David Davis

---

[5] The arguments proffered by Saul Ewing, which represented Lia as late as 2005, raise the question of Saul Ewing's knowledge *vel non* of the Lia/Saporito scheme.