UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DON LIA, MOBILE MANAGEMENT, LLC,
and N.R. AUTOMOTIVE, INC.

Plaintiffs,

-against-

MICHAEL SAPORITO and JESSE ARMSTEAD,

Defendants.
-----------------------------------------------------------X
W&D IMPORTS, INC., doing business as
Willis Honda, and DAVID DAVIS,

Plaintiff,

-against-

DON LIA, MOBILE MANAGEMENT, LLC,
N.R. AUTOMOTIVE, INC., MICHAEL SAPORITO,
JESSE ARMSTEAD, ALLSTAR MOTORS OF L.I.
INC., ALL STAR MOTORS, LLC, doing business as
Hamilton Honda, AMERICAN HONDA MOTOR
CO., INC. and DOES 1 THROUGH 7,

Defendants.
-----------------------------------------------------------X
FEUERSTEIN, District Judge:

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 07 2011 ★

LONG ISLAND OFFICE

11-CV-3621(SJF)(ETB)

**ORDER**

11-CV-4144 (SJF)(ETB)

On June 30, 2011, plaintiffs Don Lia ("Lia"), Mobile Management, LLC ("Mobile

Management") and N.R. Automotive, Inc. ("N.R. Automotive") (collectively, "the Lia parties")

filed a complaint in the Supreme Court of the State of New York, County of Nassau, against

defendants Michael Saporito ("Saporito") and Jesse Armstead ("Armstead") ("the Lia complaint"

or "the Lia action"), alleging claims seeking specific performance of two (2) agreements;

judgment declaring Lia's ownership interest in certain property; the imposition of a constructive

1

trust on certain property and assets; an accounting; and monetary damages for breach of fiduciary duty, unjust enrichment and breach of contract. On July 27, 2011, Saporito removed the action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332.

On August 25, 2011, plaintiffs W&D Imports, Inc., d/b/a Willis Honda, and David Davis (collectively, "Willis Honda"), commenced an action in this Court against the Lia parties, Saporito and Armstead, as well as Allstar Motors of L.I. Inc. ("Allstar L.I."), All Star Motors, LLC, d/b/a Hamilton Honda ("All Star" or "Hamilton Honda"), American Honda Motor Co., Inc. ("American Honda") and Does 1 Through 7 ("the Doe defendants") ("the Willis Honda action"), alleging claims for violations of the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and the New Jersey RICO statute, N.J.S.A. 2C:41-2(c) and (d); tortious interference with present and prospective economic advantage; breach of fiduciary duty (against American Honda only); negligence (against American Honda only); breach of the implied covenants of good faith and fair dealing (against American Honda only); and equitable estoppel, and seeking, *inter alia*, monetary damages; an accounting; the imposition of a constructive trust upon all past and future profits of, and property owned by, Hamilton Honda; judgment declaring that the ultimate decision in the underlying administrative proceeding was procured unlawfully and in violation of RICO and that Willis Honda is the equitable owner of Hamilton Honda and the associated realty; and an order requiring the Lia parties to divest themselves of any interest in the Hamilton Honda dealership and underlying realty.[1] Willis Honda now moves pursuant to Rules 24 and 42 of the Federal Rules of Civil Procedure to

---

[1] Although the Willis Honda action was initially assigned to the Honorable Nicholas G. Garaufis, since it was filed as a related case to the Lia action, it was subsequently reassigned to me with my consent.

intervene in the Lia action and to consolidate the two (2) actions for all purposes. For the reasons

set forth below, Willis Honda's motion is granted in part and denied in part.

I.      The Complaints[2]

     A.      The Lia Complaint

The Lia parties allege that in or around March 2003, Lia and Saporito decided to pursue

an "open point," i.e., the formation of a new automobile dealership in a specific geographic

region, in central New Jersey that had been announced by American Honda, with the

participation of Armstead. (Lia Compl., ¶ 15). On April 22, 2003, Lia, Saporito and Armstead

executed an agreement ("the 2003 Agreement), pursuant to which, *inter alia*: (1) Saporito and

Armstead agreed to apply for the open point in their names, with Armstead initially owning fifty-

one percent (51%) of the prospective dealership as the "Dealer" and Saporito owning forty-nine

percent (49%) of the prospective dealership as the "Dealer Manager," (Lia Compl., ¶¶ 18-19); (2)

Lia agreed (a) to contribute one hundred percent (100%) of the new dealership's "total required

capital investment," to be repaid under a three (3)-year, self-liquidating prime rate note, (b) to

purchase the real property on which the dealership would operate, (c) to build an automobile

sales/service facility in conformance with American Honda's specifications and (d) to make all of

the management decisions for the prospective dealership, (Lia Compl., ¶ 20); (3) Lia would be

entitled to require, on demand, that Saporito and Armstead transfer to him seventy-five percent

(75%) of their combined ownership interests in the prospective dealership, (Lia Compl., ¶ 21);

and (4) Saporito and Armstead were required to "execute additional formal agreements that

---

[2] The factual allegations are taken from the complaints and do not constitute findings of
fact by the Court.

incorporate the [foreging] terms and conditions" upon American Honda's issuance of a letter of intent awarding them the open point, (Lia Compl., ¶ 22).

Saporito and Armstead applied for the open point in their names only and represented to American Honda that they, personally, were providing all of the necessary funds. (Lia Compl., ¶ 17). However, according to the Lia parties, "it was Lia alone who contributed 100% of the funding for the dealership that ultimately became Hamilton Honda * * *." (Id.)

In 2003, in compliance with American Honda's property requirements for the open point, Lia, in the name of "Allstar Route 130 EW, LLC," purchased approximately eight (8) acres of real property located in East Windsor, New Jersey. (Lia Compl., ¶ 25). However, American Honda ultimately deemed that property unsuitable for the open point, so Lia invested more funds for its redevelopment for an alternative use. (Lia Compl., ¶ 26).

In September 2004, "[i]n continuing pursuit of the Open Point," Lia, in the name of "Allstar Route 130 HS, LLC," purchased approximately eleven (11) acres of real property in Hamilton Township, New Jersey ("the Hamilton Property"). (Lia Compl., ¶ 27). In addition, Lia purchased contiguous real property in the names of five (5) additional limited liability companies. (Lia Compl., ¶ 28).

In September 2004, American Honda awarded the open point to Saporito and Armstead ("the Hamilton dealership project"). (Lia Compl., ¶¶ 23, 30). According to the Lia parties, Saporito and Armstead failed and refused to execute the additional formal agreements required under the 2003 Agreement. (Lia Compl., ¶¶ 24, 31). In addition, the Lia parties allege that unbeknownst to them, Saporito and Armstead pursued potentially competing dealerships while their application for the open point was pending and applied to American Honda Finance Corporation ("AHFC") for approximately forty million dollars ($40,000,000.00), executing loan

4

documents in favor of AHFC for a mortgage of approximately twenty million dollars ($20,000,000.00) on the Hamilton Property. (Lia Compl., ¶¶ 33-34). The Lia parties further allege that Saporito improperly transferred a one million nine hundred thousand dollar ($1,900,000.00) mortgage from the Hamilton Property to the adjacent property owned by Lia personally. (Lia Compl., ¶ 35).

The Lia parties contend that in early November 2006, upon learning of Saporito's and Armstead's pursuit of potentially competing dealerships, Lia had a 2006 Agreement drafted, confirming that he had "exclusively funded the acquisition, operating and carrying costs" of the Hamilton dealership project and demanding that the operating agreements for the Hamilton dealership project be amended to acknowledge that Lia is "the sole member" thereof. (Lia Compl., ¶ 36). Although Saporito signed the 2006 Agreement on November 13, 2006, he failed and refused to execute the necessary amendments to the operating agreements as required thereunder. (Lia Compl., ¶ 38).

On May 19, 2009, Saporito and Armstead opened a sixty-five (65) thousand square-foot Honda automobile dealership ("the Hamilton Honda dealership") on a twelve (12)-acre campus in Hamilton, New Jersey. (Lia Compl., ¶¶ 11, 40). According to the Lia parties, Saporito and Armstead have frozen Lia out of the Hamilton Honda dealership, "depriving [him] of "participation in its 'sky-rocketing' growth and withholding his rightful distribution, with millions of dollars invested currently unpaid and with no managerial control." (Lia Compl., ¶¶ 14, 41-42). The Lia parties contend that Lia had invested in excess of ten million dollars ($10,000,000.00) to purchase the Hamilton Honda dealership's underlying real estate and other assets and to fund its development costs and operating expenses. (Lia Compl., ¶¶ 13, 41).

In their complaint, the Lia parties seek: (1) specific performance of the 2003 and 2006

Agreements (first cause of action); (2) judgment declaring that Lia is (a) the sole owner of the property he acquired, in the name of certain limited liability companies, in relation to the Hamilton Honda dealership, (b) a seventy-five percent (75%) owner of the Hamilton Honda dealership and (c) entitled to seventy-five percent (75%), and full managerial control, of the Hamilton Honda dealership (second cause of action); (3) monetary damages for breach of fiduciary duty (third and fourth causes of action against Saporito only), unjust enrichment (sixth cause of action) and breach of contract (eighth cause of action); (4) imposition of a constructive trust upon the Hamilton property and related assets, and the revenues of the Hamilton Honda dealership (fifth cause of action); and (5) an accounting of the Hamilton Honda dealership's revenues and expenses since its formation in 2009 (seventh cause of action).

B.    The Willis Honda Complaint

Between late 2000 and March 2004, Willis Honda, the owner of a dealership in Burlington, New Jersey, upon hearing that American Honda was considering the placement of a dealer in Hamilton, provided American Honda with four (4) relocation proposals offering to relocate its dealership in Burlington to Hamilton. (Willis Compl., ¶¶ 79-94). According to Willis Honda, American Honda "unilaterally decided to establish a new dealer in Willis' marketplace * * * as opposed to, simply, the relocation of the existing Willis store to Hamilton." (Willis Compl., ¶ 96). On November 9, 2004, American Honda sent Willis Honda statutory notice of the establishment of All Star, d/b/a Hamilton Honda, with Armstead and Saporito as the dealer-owners. (Willis Compl., ¶ 155).

In December 2004, Willis Honda filed a protest to American Honda's notice of its intention to establish a Honda dealership in Hamilton, New Jersey with the New Jersey Motor

Vehicle Franchise Committee ("NJMVFC") pursuant to the New Jersey Franchise Practices Act, N.J.S.A. 56:10-16 to 26. (Willis Compl., ¶¶ 32, 157). In the ensuing administrative proceeding, Willis Honda challenged the legitimacy of the proposed Hamilton Honda dealership on several grounds, including, *inter alia*, that Lia was an undisclosed *de facto* owner. (Willis Compl., ¶ 37). According to Willis Honda, throughout the administrative proceedings, the Lia parties, Saporito, Armstead and the All Star defendants "set out to conceal and lie about the participation and ownership interest of [] Lia," (Willis Compl., ¶¶ 36, 58), and "denied Lia's then present or prospective involvement in the Hamilton [Honda] dealership," (Willis Compl., ¶ 41). Willis Honda contends that the conspiracy among Lia, Saporito and Armstead to conceal Lia's involvement in the Hamilton dealership project was conceived and memorialized in the 2003 Agreement. (Willis Compl., ¶¶ 47-48).

In a final decision dated August 25, 2006, the administrative law judge ("ALJ") denied Willis Honda's protest, finding, *inter alia*, that "the evidence [was] clear and uncontradictory that Lia has n[o] ownership interest in All Star [d/b/a Hamilton Honda], does not own the land upon which All Star [d/b/a Hamilton Honda] is to be located, has not invested any monies in All Star [d/b/a Hamilton Honda], and will not be involved in the operation of All Star [d/b/a Hamilton Honda]." (Willis Compl., ¶¶ 41, 179-80). Willis Honda's subsequent appeals to the New Jersey Franchise Committee, the New Jersey Appellate Division and the New Jersey Supreme Court were unsuccessful. (Willis Compl., ¶ 181).

Willis Honda alleges that "Lia had been identified in previous federal multi-district litigation[s] as one of the infamous 'dirty dealers' in the 'Honda-gate' scandal, who had paid bribes to Honda executives, and, as such, his ownership and interest [in the Hamilton dealership project] would have triggered application of a presumption of injury in favor of Willis [Honda]"

7

in the administrative proceedings. (Willis Compl., ¶¶ 39, 141-145). According to Willis Honda, had the ALJ determined that Lia had been an undisclosed principal of the Hamilton Honda dealership, as Lia now admits to being in the Lia complaint, "then it is likely, if not a certainty, that Willis [Honda] would have prevailed in the administrative Protest," (Compl., ¶¶ 43, 146), and that the application of the Lia parties, Saporito and Armstead for the open point would have been disqualified. (Compl., ¶¶ 59-60). Willis Honda maintains that the Lia parties', Saporito's, Armstead's and All Star's "fraud and deception were pervasive throughout the administrative Protest hearing, including the actively concealed fact that Lia <u>was</u> an undisclosed majority owner of the proposed dealership, now operating." (Compl., ¶ 45) (emphasis in original).

Willis Honda also alleges that Lia and Saporito enlisted Armstead, who is African-American, to participate in the Hamilton dealership, and "falsely represented" that Armstead was a fifty-one percent (51%) owner thereof, in order to apply for minority eligibility rights under New Jersey franchise law. (Willis Compl., ¶¶ 35, 118-130).

Willis Honda seeks, *inter alia*: (1) judgment (a) declaring (i) that the decision in the administrative proceeding was procured unlawfully and in violation of RICO, (ii) that Willis Honda is the equitable owner of the Hamilton Honda dealership and the associated realty (first through fourth causes of action) and (iii) that the Lia parties, Saporito, Armstead, the All Star defendants and American Honda "are equitably estopped from asserting any consequences favorable to them from the New Jersey legal proceedings," (Willis Compl. at 80) (tenth cause of action), and (b) ordering the Lia parties, Saporito, Armstead and the All Star defendants to divest themselves of any interest in the Hamilton Honda dealership and underlying realty (first through fourth causes of action); (2) monetary damages for the federal and state RICO violations (first through fourth causes of action), the tortious interference with present and prospective economic

advantage claim (sixth cause of action) and the breach of fiduciary and negligence claims against

American Honda (seventh and eighth causes of action, respectively); (3) a full accounting and the

establishment of a constructive trust on all past and future profits of the Hamilton Honda

dealership and all property owned by the Lia parties, Saporito, Armstead and the All Star

defendants related thereto (fifth cause of action); and (4) an injunction (a) enjoining American

Honda from continuing its relationship with the All Star defendants, Saporito, Armstead and Lia

and (b) awarding Willis Honda the Hamilton Honda dealership on its breach of implied

covenants of good faith and fair dealing claim against American Honda (ninth cause of action).


II.    Discussion

    A.    Intervention

        1.    As of Right

Rule 24(a) of the Federal Rules of Civil Procedure provides, in relevant part, that "[o]n

timely motion, the court must permit anyone to intervene who: * * * (2) claims an interest

relating to the property or transaction that is the subject of the action, and is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect

its interest, unless existing parties adequately represent that interest." "Intervention as of right

under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the motion is

timely; (2) the applicant asserts an interest relating to the property or transaction that is the

subject of the action; (3) the applicant is so situated that without intervention, disposition of the

action may, as a practical matter, impair or impede the applicant's ability to protect its interest;

and (4) the applicant's interest is not adequately represented by the other parties." Mastercard

International Inc. v. Visa International Service Association, Inc., 471 F.3d 377, 389 (2d Cir.

2006); see also Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001). For

purposes of this motion, the first and last conditions are not in dispute.

"For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and

legally protectable.'" Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 474 (2d Cir. 2010)

(quoting Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir.

1990)).

Willis Honda does not have an interest in the Hamilton Honda dealership cognizable

under Rule 24(a)(2). Willis Honda does not allege that it was entitled to apply, or did in fact

apply, for the open point awarded to All Star, d/b/a Hamilton Honda. To the contrary, based

upon the allegations in the Willis Honda complaint, as well as the assertions in American

Honda's "Conditional Asset to Motion to Consolidate" ("Am. Honda Assent"), Willis Honda was

prohibited from applying for the open point, which is why it sought to relocate its dealership from

Burlington to Hamilton once it heard that American Honda was considering placing a dealer

there. (Willis Compl., ¶¶ 79-94; Am. Honda Assent, at 3). American Honda's rejection of Willis

Honda's first three (3) relocation proposals occurred prior to the alleged conspiracy by Lia,

Saporito and Armstead, (see Compl., ¶¶ 84-86, 91-93), and, thus, was clearly unrelated thereto.

At the time that Willis Honda submitted its fourth relocation proposal, in March 2004, American

Honda had already determined that it was going to place a new dealership in Hamilton and

announced the open point therefor, for which Willis Honda was ineligible. (See Compl., ¶ 94).

Accordingly, any adjudication of the ownership interests in the Hamilton Honda dealership in the

Lia action would have no effect upon any interest of Willis Honda, which no right to open a

Honda dealership in Hamilton, New Jersey once its third relocation proposal was denied by

American Honda.

Moreover, the underlying transactions in the Lia action are the 2003 and 2006 Agreements, and business dealings, between the parties to the Lia action, to which Willis Honda was not a party. Since Willis Honda is a stranger to the contractual dispute between the parties in the Lia action, any resolution of that contractual dispute would not affect Willis Honda's interests. See, e.g. Mastercard, 471 F.3d at 390 (finding that Visa could not change any harm to its interests through intervention in Mastercard's action because it was a stranger to the contractual dispute underlying that action).

In sum, Willis Honda's absence from the Lia action will not cause any harm to its interests, nor will its presence in the Lia action allow it to protect its interests. See Mastercard, 471 F.3d at 390. Since Willis Honda does not have a legally protectable right in the Hamilton Honda dealership, the branch of its motion seeking to intervene in the Lia action as of right is denied.

### 2. Permissive

Rule 24(b)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[o]n timely motion, the court may permit anyone to intervene who: * * * (B) has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(3) further provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Since both actions were commenced within two (2) months of each other, and neither has proceeded to discovery, Willis Honda's intervention in the Lia action would not unduly delay the Lia action. However, although the two (2) actions share some common facts relating to the award of the open point to All Star, d/b/a Hamilton Honda, the Lia action is mainly concerned

with transactions that occurred prior to the award, as well as the freezing out of the Lia parties

from the Hamilton Honda dealership with which Willis Honda was uninvolved, whereas the

Willis Honda action is mainly concerned with transactions occurring after the award, i.e., during

the administrative proceedings relating to Willis Honda's protest. Moreover, the parties to the

Lia action may be prejudiced by the accusations in the Willis Honda action against them, which

are irrelevant to the underlying dispute in the Lia action. Accordingly, the branch of Willis

Honda's motion seeking permissive intervention in the Lia action is denied.


B.     Consolidation

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the

court involve a common question of law or fact, the court may: * * * consolidate the actions; or

issue any other orders to avoid unnecessary cost or delay." See Devlin v. Transportation

Communications Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999). District courts have broad

discretion to determine whether consolidation is appropriate. See Johnson v. Celotex Corp., 899

F.2d 1281, 1284-1285 (2d Cir. 1990). Consolidation "should be prudently employed as a

valuable and important tool of judicial administration, * * *, invoked to expedite trial and

eliminate unnecessary repetition and confusion." Devlin, 175 F.3d at 130 (internal quotations

and citations omitted). Nonetheless, although considerations of judicial economy generally favor

consolidation, "[c]onsiderations of convenience and economy must yield to a paramount concern

for a fair and impartial trial." Johnson, 899 F.2d at 1285; see also Devlin, 175 F.3d at 130

("[E]fficiency cannot be permitted to prevail at the expense of justice * * *.") In determining

whether consolidation is appropriate, the court must consider:

> Whether the specific risks of prejudice and possible confusion are overborne by

the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Johnson, 899 F.2d at 1285 (internal quotations and citations omitted).

As noted above, the two (2) actions contain common questions of fact relating to American Honda's award of the open point to All Star, d/b/a Hamilton Honda, involve many of the same parties and will likely have overlapping discovery. Moreover, American Honda, the only "independent" party not named in both actions, conditionally assents to consolidation for pretrial purposes only. Accordingly, in the interests of judicial economy and efficiency, and for purposes of minimizing the expense and burden on all parties in prosecuting and defending multiple lawsuits involving common issues of fact, the two (2) actions are consolidated for all pretrial purposes.[3] Nonetheless, since the parties in the Lia action may be prejudiced by the admission of Willis Honda's allegations against them at trial, which have little or no relevance to the underlying dispute in the Lia action and which may confuse the issues in the two (2) actions, the actions will be severed for trial.

During pretrial proceedings, the actions will proceed under docket number 11-cv-3621 (the "lead case"), all papers filed in these actions shall henceforth bear only the lead case docket number, the caption of this consolidated action shall be as set forth above, with the exception that the parties in the Willis Honda action shall be designated as "Consolidated Plaintiffs" and "Consolidated Defendants," respectively, and the action assigned docket number 11-cv-4144

---

[3] The consolidation does not affect the pending motions to dismiss the Willis Honda complaint. Those motions are fully briefed and no further briefing will be allowed as a result of the consolidation.

shall be administratively closed with leave to reopen at the time of trial.

## II. Conclusion

For the foregoing reasons, the branch of Willis Honda's motion seeking consolidation of the above-captioned actions is granted to the extent that the actions are consolidated for all pretrial purposes, to proceed under docket number 11-cv-3621, and Willis Honda's motion is otherwise denied. The Clerk of Court shall amend the caption of the lead case in accordance with this Order and administratively close the action assigned docket number 11-cv-4144, with leave to reopen at the time of trial.

SO ORDERED.

/s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:         December 7, 2011
               Central Islip, New York