UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
W&D IMPORTS, INC., doing business as
Willis Honda, and DAVID DAVIS,

                      Plaintiffs,

        -against-

DON LIA, MOBILE MANAGEMENT, LLC,
N.R. AUTOMOTIVE, INC., MICHAEL SAPORITO,
JESSE ARMSTEAD, ALLSTAR MOTORS OF L.I.
INC., ALL STAR MOTORS, LLC, doing business as
Hamilton Honda, AMERICAN HONDA MOTOR
CO., INC. and DOES 1 THROUGH 7,

                      Defendants.
------------------------------------------------------------------X



**OPINION AND ORDER**
11-CV-4144(SJF)(ETB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N Y

★ APR 22 2013 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On August 25, 2011, W&D Imports, Inc., d/b/a Willis Honda, and David Davis (together,

"plaintiffs") commenced this action against Don Lia, Mobile Management, LLC, N.R.

Automotive Inc. (the "Lia parties"), Allstar Motors of L.I., Inc., All Star Motors, LLC, d/b/a

Hamilton Honda (together, "All Star"), Michael Saporito, Jesse Armstead (collectively, the

"RICO defendants"), and American Honda Motor Co., Inc. ("American Honda"), asserting

claims arising out of American Honda's denial of plaintiffs' application to establish a Honda

dealership in Hamilton, New Jersey (the "Hamilton dealership") and award of the Hamilton

dealership to All Star. Plaintiffs assert claims against the RICO defendants for: (1) violation of

the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c),

(d); (2) violation of the New Jersey anti-racketeering statute, N.J. STAT. ANN. 2C:41-2(c), (d);

(3) tortious interference with present and prospective economic advantage; and (4) equitable

estoppel. [Docket Entry No. 1] ("Compl."). Plaintiffs assert claims against American Honda

for: (1) breach of fiduciary duty; (2) tortious interference; (3) negligence; (4) breach of the implied covenants of good faith and fair dealing; and (5) equitable estoppel. Id.

Plaintiffs seek: (1) monetary damages; (2) an accounting; (3) the imposition of a constructive trust upon all past and future profits of the Hamilton dealership; (4) judgment declaring that (a) the ultimate decision in an underlying New Jersey state administrative proceeding challenging the establishment of the Hamilton dealership was procured unlawfully and in violation of RICO and (b) Willis Honda is the equitable owner of the Hamilton dealership and the associated realty; and (5) an order requiring the RICO defendants to divest themselves of any interest in the Hamilton dealership and underlying realty. Id.

This action follows the Lia parties' filing of a complaint in the Supreme Court of the State of New York, County of Nassau, against Saporito and Armstead seeking: specific performance of two (2) purported agreements between Lia, Saporito and Armstead related to the establishment of the Hamilton dealership; judgment declaring Lia's ownership interest in the Hamilton dealership; the imposition of a constructive trust upon certain property and assets related to the Hamilton dealership; an accounting; and monetary damages for breach of fiduciary duty, unjust enrichment, and breach of contract (the "Lia action"). The Lia action was removed to this Court on July 27, 2011 pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. This case was initially assigned to the Honorable Nicholas G. Garaufis and was reassigned to the Court as related to the Lia action on September 26, 2011. On December 7, 2011, the Court denied plaintiffs' motion to intervene in the Lia action, holding that "Willis Honda does not have a legally protectable right in the Hamilton Honda dealership" and its "absence from the Lia action will not cause any harm to its interests, nor will its presence in the Lia action allow it to protect its interests." [Docket Entry No. 59]. The Court consolidated this

2

action with the Lia action for pretrial purposes only. Id. By order dated November 6, 2012, the Court granted the motions of Saporito and Armstead to dismiss the Lia action. [Docket Entry No. 79]. An appeal of the judgment in the Lia action is pending.

Now before the Court are the motions of American Honda [Docket Entry No. 45] and the RICO defendants [Docket Entry No. 50] to dismiss plaintiffs' complaint. For the reasons that follow, the motions are GRANTED.

I.    Background

Upon learning that American Honda was considering the establishment of a dealership in Hamilton, Willis Honda, the owner of a dealership in Burlington, New Jersey, provided American Honda with four (4) proposals between late 2000 and March 2004 offering to relocate its dealership from Burlington to Hamilton. Compl. at ¶¶ 79-94. On November 9, 2004, American Honda sent Willis Honda notice of its intention to establish the Hamilton dealership with All Star (an entity controlled by Saporito, Armstead and, allegedly, Lia) as owner. Compl. at ¶ 155.

In December 2004, Willis Honda filed an administrative protest with the New Jersey Motor Vehicle Franchise Committee (the "Franchise Committee")[1] against American Honda's plan for the Hamilton dealership. Compl. at ¶¶ 32, 37, 157. Willis Honda asserted that the Hamilton dealership would "seriously endanger the profitability and viability" of Willis Honda's existing dealership in Burlington and challenged the legitimacy of the proposed dealership on the ground that, inter alia, Lia was an undisclosed de facto owner. Compl. at ¶¶ 32, 37. In an initial decision dated April 12, 2006, the administrative law judge ("ALJ") denied Willis Honda's

---

[1]    The Committee is created by statute, N.J. STAT. ANN. §§ 56:10-17, and consists of the Director of the Division of Motor Vehicles, the Commissioner of the Department Commerce and Economic Development and the Director of the Division of Consumer Affairs.

protest, finding, inter alia, that "the evidence [was] clear and uncontradictory that Lia has n[o] ownership interest in All Star, does not own the land upon which All Star is to be located, has not invested any monies in All Star, and will not be involved in the operation of All Star." Compl. at ¶¶ 41, 179-80. The ALJ's decision was adopted by the Franchise Committee on August 25, 2006, and Willis Honda's subsequent appeals to the New Jersey Appellate Division and the New Jersey Supreme Court were unsuccessful. Compl. at ¶ 181.

Plaintiffs allege that throughout the administrative proceedings, the RICO defendants "set out to conceal and lie about the participation and ownership interest of [] Lia" and "denied Lia's then present or prospective involvement in the Hamilton dealership," Compl. at ¶¶ 36, 41, 58, because "Lia had been identified in previous federal multi-district litigation[s] as one of the infamous 'dirty dealers' in the 'Honda-gate' scandal, who had paid bribes to Honda executives, and, as such, his ownership and interest [in the Hamilton dealership] would have triggered application of a presumption of injury in favor of Willis [Honda]," Compl. at ¶¶ 39, 141-145.[2] According to plaintiffs, the complaint filed in the Lia action "substantiates and confirms in detail that [the] RICO [d]efendants' fraud and deception were pervasive throughout the administrative Protest hearing, including the actively concealed fact that Lia was an undisclosed majority owner of the proposed dealership," and had the ALJ known of Lia's involvement "it is likely, if not a certainty, that Willis [Honda] would have prevailed in the administrative Protest" and that the application of All Star for the Hamilton dealership would have been denied. Compl. at ¶¶ 43, 45, 59-60, 146.[3]

---

[2]     Plaintiffs also allege that Lia and Saporito "falsely represented" that Armstead was a fifty-one percent (51%) owner of the Hamilton dealership in order to apply for minority eligibility rights under New Jersey law. Compl. at ¶¶ 35, 118-130.

[3]     According to plaintiffs, "[u]ntil they learned in July 2011 of Lia's lawsuit, [they] had no

II.    Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  See McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010)

---

access to the revelations contained in the [Lia complaint], and they could not through any magnitude of due diligence have obtained that information earlier." Compl. at ¶ 61.

("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotations and citations omitted). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (internal quotations and citation omitted).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

III.    Analysis

    A.    The RICO Defendants

        1.    Rooker-Feldman Doctrine[4]

The Rooker-Feldman doctrine provides that federal district courts lack subject matter jurisdiction to review final judgments of state courts. Morrison v. City of N.Y., 591 F.3d 109, 112 (2d Cir. 2010). The doctrine applies to "cases brought by state-court losers complaining of

---

[4]    "In contrast to a 12(b)(6) motion for failure to state a claim, when deciding a 12(b)(1) motion for dismissal based on lack of subject matter jurisdiction, the court should not draw argumentative inferences in favor of the party asserting jurisdiction." Goddard v. Citibank, NA, No. 04CV5317, 2006 WL 842925, at *3 (E.D.N.Y. Mar. 27, 2006) (internal quotation marks omitted).

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine applies if: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff invites district court review and rejection of that state-court judgment; and (4) the state-court judgment was rendered before the federal proceedings commenced. Morrison, 591 F.3d at 112; see also Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

According to the RICO defendants, all of plaintiffs' claims against them are barred by the Rooker-Feldman doctrine, since the final decision of the Franchise Committee upheld American Honda's decision to establish the Hamilton dealership and to award the franchise to All Star, and the Franchise Committee's decision was affirmed by the New Jersey Appellate Division, W&D Imports, Inc. v. Am. Honda Motor Co. Inc., 2008 WL 281576 (N.J. Super. Ct. App. Div. Feb. 4, 2008).[5] RICO Defendants' Memorandum in Support of Motion to Dismiss [Docket Entry No. 50-1] ("RICO Def. Memo.") at 13-14. The RICO defendants argue that plaintiffs "seek[] redress for injuries allegedly sustained as a result of the New Jersey decisions" and "facially ask[] [the] Court to 'review' and reject the New Jersey administrative and judicial decisions" and "to speculate as to how the factual and legal issues would have been decided had the New Jersey tribunals been aware of certain purported 'facts.'" Id. at 14. The RICO defendants also assert that the Court's "acceptance of any of [plaintiffs'] factual allegations would necessarily require th[e] Court to review and reject the New Jersey tribunals' entire conclusions." Id. (emphasis in

---

[5]     The Supreme Court of New Jersey denied plaintiffs' petition for further review.  W&D Imports, Inc. v. Am. Honda Motors, Inc., 195 N.J. 421 (2008).

original).

In response, plaintiffs argue that "[t]he facts that underlie this case and the legal causes and remedies here have a life that is wholly distinct from those in the New Jersey administrative action." Plaintiffs' Opposition to the RICO Defendants' Motion to Dismiss [Docket Entry No. 51] ("Pl. RICO Opp.") at 17. Plaintiffs state that they "complain of what the . . . [d]efendants carried out over eight years and continuing, collusively and dishonestly in conjunction with non-parties to the administrative case," and that they "do not complain of an injury caused by the New Jersey decision and confirming appeals," but "[r]ather, it is the conduct of the . . . [d]efendants, and resulting damage, which are the causes of this Complaint." Id. Plaintiffs also argue that "[t]he remedies sought here are distinct from what the New Jersey protest law could have contemplated." Id.[6]

The non-monetary relief requested by plaintiffs would, if granted, require the Court to void the state-court judgment which authorized American Honda's award of the Hamilton dealership to All Star and remains in full effect. Therefore, the Court lacks subject matter jurisdiction (1) to declare (a) that the decision in the administrative proceeding was procured unlawfully, (b) that Willis Honda is the equitable owner of the Hamilton dealership and the associated realty, and (c) that the RICO defendants "are equitably estopped from asserting any consequences favorable to them from the New Jersey legal proceedings"; (2) to order the RICO defendants to divest themselves of any interest in the Hamilton dealership and underlying realty; (3) to enjoin American Honda from continuing its relationship with the RICO defendants; and (4) to award Willis Honda the Hamilton dealership. See, e.g., McKnight v. Middleton, 699 F.

---

[6]    Plaintiffs do not dispute that plaintiffs lost in state court and that they commenced this federal action after the state-court judgment was issued.

Supp.2d 507, 515 (E.D.N.Y. 2010) ("The [Rooker-Feldman] doctrine . . . applies when 'the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment.'") (internal quotation marks omitted) (quoting McNamara v. Kaye, 360 F. App'x 177 (2d Cir. 2009)). Accordingly, plaintiffs' non-monetary claims for relief against the RICO defendants are dismissed with prejudice.[7]

However, the Rooker-Feldman doctrine does not deprive the Court of jurisdiction over claims that "allege fraud in the procurement of [a state-court] judgment" (as opposed to claims that merely argue "that the state court issued an incorrect opinion"). Marshall v. Grant, 521 F. Supp.2d 240, 245 (E.D.N.Y. 2007) (holding that the plaintiff's claims of "perjury, fraud and misrepresentations" in the course of a divorce proceeding, leading to a judgment causing injury to the plaintiff, were "independent from the state judgment"); Goddard v. Citibank, NA, No. 04CV5317, 2006 WL 842925, at *6 (E.D.N.Y. Mar. 27, 2006) (declining to dismiss claims of conversion and intentional infliction of emotional distress on Rooker-Feldman grounds "because they allege fraud in the procurement of the judgment, independent from the barred claim that the state court issued an incorrect decision regarding the law or the evidence presented to it"). Plaintiffs allege that the RICO defendants conspired to commit fraud upon American Honda during the dealer selection process and that such conduct was not "produced" by the state-court

---

[7]     Plaintiffs appear to argue that Rooker-Feldman does not deprive the Court of subject matter jurisdiction over their claims against the RICO defendants because the RICO defendants were not parties to the administrative protest proceeding. Pl. RICO Opp. at 16. Although Rooker-Feldman "require[s] common identity between the plaintiff in the federal action and the party defeated in the state court action," it does not provide "that a plaintiff may avoid Rooker-Feldman simply by adding new or different defendants in the federal action." Bobrowsky v. Yonkers Courthouse, 777 F. Supp.2d 692, 705 n.17 (S.D.N.Y. 2011) (citing Roterin v. Amodeo, No. 07-CV-4357, 2009 WL 579138, at *1 (2d Cir. Mar. 6, 2009)). Therefore, the fact that the RICO defendants were not parties to the New Jersey administrative proceeding does not preclude the application of Rooker-Feldman to the claims against them.

judgment, but rather preceded the judgment and was "acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88; McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007) ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings."). Although recovery by plaintiffs on their claims against the RICO defendants would imply that the state-court judgment was erroneous (having been procured by fraud), such a possibility does not necessarily deprive the Court of jurisdiction, as "a suit asking a federal court to deny a legal conclusion reached by a state court [may] nonetheless be independent for Rooker-Feldman purposes. . . . The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal [of the state-court judgment], forbidden by Rooker-Feldman . . . ." Hoblock, 422 F.3d at 87-88 (internal quotation marks and alterations omitted). Insofar as plaintiffs' claims against the RICO defendants seek monetary damages for unlawful conduct by the RICO defendants preceding the state-court judgment, the Court could grant such relief without disturbing the Franchise Committee's authorization of American Honda's award of the Hamilton dealership to All Star. See id. at 87 (holding that the plaintiffs sought reversal of the state-court judgment where the defendant could not "comply with both the state-court order and the desired federal-court order"); Goddard, 2006 WL 842925, at *6 ("The remedies sought . . . , i.e. money damages unavailable in the state court proceeding, strongly support the conclusion that these claims are independent from the state court judgment.") but see Levitin v. Homburger, 932 F. Supp. 508, 518 (S.D.N.Y. 1996) (dismissing claim pursuant to Rooker-Feldman where the plaintiff's claim for monetary damages as a result of a fraudulently obtained sale order of the plaintiff's partnership interest required the court "to review the judgment rendered in the special

10

proceeding, readjudicate [plaintiff's] numerous claims, and grant him monetary damages").
Therefore, the Rooker-Feldman doctrine does not deprive the Court of subject matter jurisdiction
over plaintiffs' monetary claims against the RICO defendants.

        2.    RICO Claims

            a.    Section 1962(c)

The RICO statute provides a private right of action for treble damages for a "person
injured in his business or property by reason of a violation of section 1962." 18 U.S.C.
§ 1964(c). Plaintiff alleges that the RICO defendants violated both section 1962(c) and section
1962(d) of the RICO statute. Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "A plaintiff charging civil RICO violations must allege each of the claim's
elements, including '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering
activity,' as well as 'injury to business or property as a result of the RICO violation.'" Terrell v.
Eisner, 104 F. App'x 210, 212 (2d Cir. 2004) (quoting Anatian v. Coutts Bank (Switzerland)
Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).

"The acts of racketeering activity that constitute the pattern must be . . . 'related, and
[either] amount to or pose a threat of continuing criminal activity.'" Abramovich v. Oliva, No.
11 CV 1755, 2012 WL 3597444, at *9 (E.D.N.Y. Aug. 20, 2012) (quoting Spool v. World Child
Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) (alteration in Spool)); see also GICC
Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995). The continuing criminal
activity requirement "can be satisfied either by showing a 'closed-ended' pattern—a series of
related predicate acts extending over a substantial period of time—or by demonstrating an 'open-

11

ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool, 520 F.3d at 183 (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241-41 (1989) ("'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.")).

The RICO defendants argue that "although [p]laintiffs allege the existence of an open-ended pattern of racketeering activity, the Complaint pleads no facts supporting such a conclusion," and that even if plaintiffs adequately alleged illegal conduct on behalf of the RICO defendants, the allegations "would not support the existence of future criminal activity, or even the inference that such activity could occur." RICO Def. Memo. at 26. In response, plaintiffs argue that the complaint "alleges that the racketeering activities were 'continuous and interrelated' in that they were integral to the enterprise in carrying out its purpose of obtaining a Honda franchise through an unlawful conspiracy, false applications, and multiple material perjuries," and that "the RICO defendants['] use of the mail to submit fraudulent financial and corporate ownership documents began as early as 2003[,] . . . continues to operate today and, upon information and belief, it could not continue its operations without its practice of mail fraud in regularly confirming its ownership with Am. Honda through fraudulent statements." Pl. Opp. Memo. at 26-27.

Plaintiffs have failed to adequately allege an open-ended pattern of racketeering.[8] "To satisfy open-ended continuity, the plaintiff[s] need not show that the predicates extended over a substantial period of time but must show there was a threat of continuing criminal activity

---

[8] Insofar as plaintiffs allege a closed-ended racketeering pattern, they have failed to allege "'a series of related predicates extending over a substantial period of time.'" United States v. Pizzonia, 577 F.3d 455, 465 (2d Cir. 2009) (quoting H.J. Inc., 492 U.S. at 242).

beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999). "This threat is generally presumed when the enterprise's business is primarily or inherently unlawful." Spool, 520 F.3d at 185; see also United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995) ("[W]here the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established . . . ."). However, "[w]here the enterprise primarily conducts a legitimate business, no presumption of a continued threat arises. Instead, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Dolan v. Fairbanks Capital Corp., --- F. Supp.2d --- , 2013 WL 991002, at *8 (E.D.N.Y. Mar. 13, 2013) (internal quotation marks and citation omitted).

Here, the RICO defendants' underlying business activities, i.e., operating a Honda dealership franchise, are not inherently illegal, and therefore a threat of continuing criminal activity is not presumed. Moreover, plaintiffs have failed to allege that the unlawful predicate acts in the complaint are the RICO defendants' regular way of conducting their business or that the nature of the predicate acts imply a threat of continued criminal activity. See Nightingale Grp., LLC v. CW Cap. Mgmt., LLC, No. 11 Civ. 9293, 2012 WL 2674539, at *8 (S.D.N.Y. July 5, 2012). "The Second Circuit has made clear that a scheme that is 'inherently terminable [] does not imply a threat of continued racketeering activity.'" Dolan, 2013 WL 991002, at *8 (quoting Cofacredit, 187 F.3d at 244) (alteration in Dolan); see also Nafta v. Feniks Int'l House of Trade (U.S.A.) Inc., 932 F. Supp. 422, 427 (E.D.N.Y. 1996) ("[A] single scheme that is

inherently terminable, or acts that focus on a clearly defined discrete and finite goal, generally

cannot establish the threat of ongoing continuity . . . .") (internal quotation marks and citation

omitted). Plaintiffs allege that the goal of the RICO enterprise was to "establish th[e] new

Honda dealership within Willis[ Honda's] relevant market area," and describes the

"establishment of All Star's Hamilton Honda dealership in 2009" as the "crown jewel of the

unlawful enterprise." Compl. at ¶¶ 29, 35. The predicate acts alleged consist of mailings

between All Star and American Honda relating to All Star's application for the Hamilton

dealership, which were allegedly fraudulent because they were "founded upon the underlying

material falsehood that Saporito and Armstead were to be the exclusive owners of [the] new

Honda [open] point." Compl. at ¶ 209. Therefore, the alleged racketeering activity consists of a

single misrepresentation (albeit repeated in several filings and documents) by the RICO

defendants with the finite goal of gaining American Honda's approval of All Star's application

for the Hamilton dealership. Even if true, such a discrete fraudulent scheme does not present a

threat of continued criminal activity, as required under the RICO statute. See Mathon v. Marine

Midland Bank, N.A., 875 F. Supp. 986, 998 (E.D.N.Y. 1995) (finding no "threat of continuity"

in a case with "a single transaction involving one alleged victim, albeit two persons, one real

estate transaction, a limited goal, no threatened future action, and no allegation of long-term

criminal conduct"); see also FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp.2d 362,

372 (E.D.N.Y. 2002) ("Courts in the Second Circuit have generally held that where the conduct

at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is

lacking in closed-ended continuity."); cf. United States v. Busacca, 936 F.2d 232 (6th Cir. 1991)

("The manner in which the embezzlements occurred was capable of repetition indefinitely into

the future . . . ."). Although plaintiffs attempt to establish continuity by alleging that, "upon

14

information and belief," the alleged RICO enterprise "could not continue its operations without its practice of mail fraud in regularly confirming its ownership with Am. Honda through fraudulent statements," such speculation is not sufficient to demonstrate a threat of continuing criminal activity.

For the foregoing reasons, plaintiffs have failed to allege a pattern of racketeering activity on behalf of the RICO defendants.[9] Accordingly, plaintiffs' claim under section 1962(c) is dismissed.

b.      Section 1962(d)

"Under 18 U.S.C. § 1962(d), it is . . . unlawful 'for any person to conspire to violate' section 1962(c)." In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11 MD 2262, --- F. Supp.2d ---, 2013 WL 1285338, at *48 (S.D.N.Y. Mar. 29, 2013). A "RICO conspiracy requires evidence that [a defendant] participated in the enterprise through a pattern of racketeering activity, or agreed to do so." United States v. Tellier, 83 F.3d 578, 581 (2d Cir. 1996). Since plaintiffs have failed to adequately allege a pattern of racketeering activity, their RICO conspiracy claim must also be dismissed. See Dolan, 2013 WL 991002, at *12 ("Because . . . plaintiff has failed to come forward with evidence sufficient to raise a question of fact as to whether a pattern of racketeering activity existed, his RICO conspiracy claim also must be dismissed."); FD Prop. Holding, 206 F. Supp.2d at 373 ("Because the RICO conspiracy is dependent upon the Section 1962(c) RICO claim, dismissal of that claim mandates dismissal of the RICO conspiracy claim.").

---

[9]      Given the disposition of plaintiffs' RICO claim, it is not necessary for the Court to determine whether plaintiffs have adequately pleaded the remaining elements.

15

3. State Law Claims

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. New York–Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). In deciding whether to exercise supplemental jurisdiction, a district court must "balance [ ] the traditional 'values of judicial economy, convenience, fairness, and comity.'" Id. (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720. 350 (1988)). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Id. (quoting Cohill, 484 U.S. at 350 n. 7). Given that all of plaintiffs' federal law claims against the RICO defendants are dismissed, the Court declines to exercise supplemental jurisdiction over plaintiffs' pendent state-law claims against the RICO defendants. Accordingly, plaintiffs' claims against the RICO defendants for violation of the New Jersey anti-racketeering statute, constructive trust and accounting, tortious interference with present and prospective economic advantage, and equitable estoppel are dismissed without prejudice.

B. American Honda

1. Collateral Estoppel[10]

The doctrine of collateral estoppel "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). "[F]ederal courts must give

---

[10] "Although both res judicata and collateral estoppel are affirmative defenses, 'it is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion.'" Burton v. Silvercrest Ctr. for Nursing & Rehabilitation, No. 11-CV-2757, 2013 WL 1346308, at *4 (E.D.N.Y. Mar. 29, 2013) (quoting Sassower v. Abrams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)).

16

state-court judgments the same preclusive effect as the judgment would have in the state from which it originated." Hoy v. Inc. Vill. of Bayville, 765 F. Supp.2d 158, 166 (E.D.N.Y. 2011); see also Allen v. McCurry, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ."). Under New Jersey law, collateral estoppel bars the relitigation of an issue where: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." First Union Nat. Bank v. Salem Marina, Inc., 190 N.J. 342, 352 (2007) (internal quotation marks omitted). In determining whether the issue to be precluded is identical to the issue decided in the prior proceeding, the court must determine: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same." Id. at 353 (internal quotation marks omitted). The Court should also "consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." Id.

American Honda asserts that collateral estoppel bars each of plaintiffs' claims against

17

them because the material factual allegations presented here were fully and fairly litigated in New Jersey state court. American Honda's Memorandum of Points and Authorities in Support of Motion to Dismiss [Docket Entry No. 45-2] at 8. In response, plaintiffs argue that the "limited administrative proceeding in New Jersey never contemplated an inquiry into the facts underlying tortious and other wrongful conduct by American Honda" and that plaintiffs were not permitted to (1) seek compensatory damages, (2) assert any of the causes of action raised here, or (3) engage in more than "minimal and narrowly focused" discovery. Plaintiffs' Opposition to Defendant American Honda's Motion to Dismiss [Docket Entry No. 46] ("Pl. Am. Honda Opp.") at 15-16. Plaintiffs also argue that they were denied a full and fair opportunity to litigate the issues raised in this action due to Lia's alleged perjury and that "American Honda was complicit in assuring that facts about Lia could not surface . . . [by] repeatedly ridicul[ing] Willis [Honda] for temerity in suggesting, then, facts Lia now asserts." Id. at 15-17.

The New Jersey Supreme Court "ha[s] recognized that concerns about finality and consistency as between tribunal findings, rooted in principles of equity and economy, are applicable to the intersection of judicial and administrative proceedings" and that "[a]dministrative tribunals can and do provide a full and fair opportunity for litigation of an issue." Winters v. N. Hudson Regional Fire and Rescue, 212 N.J. 67, 87 (2012) (internal quotation marks omitted). Therefore, administrative "judgments on identical issues may form the basis for application of the doctrine of collateral estoppel so long as they are rendered in proceedings which merit such deference," i.e., "proceedings [that] provide significant procedural and substantive safeguards, similar to those that are provided to litigants in courts of law." Id. (internal quotation marks omitted).

Willis Honda initiated the administrative proceedings pursuant to the New Jersey

Franchise Practices Act (the "Franchise Act"). N.J. STAT. ANN. §§ 56:10-16. The Franchise Act "prohibits a franchisor from granting a new franchise if it would cause injury to an existing franchisee or to the public . . . ." W&D Imports, 2008 WL 281576, at *1. The statute "requires a franchisor to give existing franchisees in the same line make within the relevant market area 90 days' advance written notice of its intention to grant, relocate, reopen or reactivate a franchise of the same line make . . . ." Id. (internal quotation marks omitted). After "receipt of the notice . . . an aggrieved franchisee may file a protest with the Motor Vehicle Franchise Committee." Id. The Franchise Committee must then determine "whether the new distributorship will be 'injurious' in accordance with the criteria set forth in the" Franchise Act. Monmouth Chrysler-Plymouth, Inc. v. Chrysler Corp., 102 N.J. 485, 490-91 (1986). In determining whether the grant of a new franchise would cause injury to the existing franchisee, the Franchise Committee may consider, inter alia:

> (1) The effect that the proposed franchise or business would have on the provision of stable, adequate and reliable sales and service to purchasers of vehicles in the same line make in the relevant market area;
>
> (2) The effect that the proposed franchise or business would have on the stability of existing franchisees in the same line make in the relevant market area;
>
> (3) Whether the existing franchisees in the same line make in the relevant market area are providing adequate and convenient consumer service for motor vehicles of the line make in the relevant market area, which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicles parts and qualified service personnel;
>
> (4) The effect on a relocating dealer of a denial of its relocation into the relevant market area.

W&D Imports, 2008 WL 281576, at *1 (citing N.J. STAT. ANN. §§ 56:10-23(a)). Additionally, the Franchise Committee must consider "the motivation of the franchisor in designating the new dealer. If the protesting dealer is able to prove that the manufacturer's decision to franchise a

new dealer in the relevant market area was not made in good faith, but to coerce, intimidate, or retaliate against an existing dealer, then that proof, combined with some evidence of economic injury, would satisfy the statutory test of injury to the franchisee." Monmouth, 102 N.J. at 501.

The ALJ's decision demonstrates that the factual allegations forming the basis for each of plaintiffs' claims against American Honda were fully litigated in the New Jersey administrative proceeding. The complaint alleges that American Honda: (1) breached the covenant of good faith and fair dealing "by the improper method employed to select and locate a Hamilton dealer," Pl. Am. Honda Opp. at 24 (emphasis omitted); (2) acted negligently in approving All Star for the Hamilton dealership because it "knew or should have known that the [All Star] application was materially false and fraudulent" and "failed to perform the proper due diligence and investigate the All Star Application," id. at 22 (internal quotation marks omitted); (3) tortiously interfered with plaintiffs' prospective economic advantage by "enabl[ing] the [RICO] defendants' unlawful scheme by failing to exercise its customary due diligence that would undoubtedly have exposed the [RICO] defendants' fraudulent conspiracy," id. at 18; and (4) breached its fiduciary duty to plaintiffs by "fail[ing] to investigate and overlook[ing] the reality that Saporito and Armstead did not meet Am. Honda's financial investment and qualifications as franchisees and merely served as fronts for the real party in interest, Defendant Lia," Compl. at ¶ 284. See also Compl. at ¶¶ 281, 283-85, 293, 302.

The sufficiency of the selection process and American Honda's basis for the selection of All Star for the Hamilton dealership were addressed at length in the ALJ's opinion, and the findings were reviewed and affirmed by the Franchise Committee and the Appellate Division. According to the ALJ, Willis Honda's allegations that American Honda failed to follow "proper protocol in choosing All Star" were "not supported by any credible evidence . . . that [American]

Honda did not act appropriately. In fact, [American] Honda followed its standard open point process in the selection of All Star." [Docket Entry No. 1-2] at ¶ 39; see also id. at ¶¶ 40-42. The ALJ also found that American Honda's selection of All Star for the Hamilton dealership was "motivated by economic considerations" and that it "acted appropriately . . . by conducting a thorough review of all applicants and choosing All Star's proposal on its merits." Id. at 24; see also W&D Imports, 2008 WL 281576, at *4-8 (summarizing American Honda's process and motivation in establishing the Hamilton dealership).

The Franchise Committee was "satisfied that the [ALJ's] findings of fact and conclusions of law is [sic] supported by substantial credible evidence in the record[,] that his decision dismissing the petitioner's protest is correct," and "that the [ALJ] correctly considered and applied the criteria set forth in [the Franchise Act] and Monmouth . . . in finding that the proposed grant of a new Honda dealership franchise to All Star Motors would not be injurious to [Willis Honda] or to the public interest." [Docket Entry No. 1-2] at 2-3. Likewise, the New Jersey Appellate Division characterized the ALJ's opinion as "comprehensive" and noted that "[t]he ALJ concluded that American Honda's employees gave credible testimony concerning the company's good faith economic reasons for wanting to create a new [dealership] in Hamilton . . . [and] credited their reasons for rejecting Davis' proposals that he be allowed to operate two contiguous dealerships in Burlington and Hamilton or that he be permitted to sell the Burlington facility to another Honda dealer after moving his operation to Hamilton." W&D Imports, 2008 WL 281576, at *8. The New Jersey Appellate Division rejected plaintiffs' assertion on appeal that "evidence [before the ALJ] of [American] Honda's bad faith was clear and unrebutted" and held that the claim was "without sufficient merit to warrant discussion in a written opinion." Id. at *10.

21

Furthermore, the determination that American Honda acted properly in denying Willis Honda's application and awarding the Hamilton dealership to All Star was essential to the outcome of the administrative protest proceeding, as the Franchise Committee was required to determine "the motivation of the franchisor in designating the new dealer" in order to determine whether the franchisee suffered an injury, as defined under the Franchise Act. Monmouth, 102 N.J. at 501. Therefore, in order to prevail on their claims against American Honda here, plaintiffs would have to prove the same factual allegations that they failed to prove in the New Jersey state courts.

Plaintiffs argue that they were not able to assert in the administrative proceeding the causes of action asserted here and that therefore the decision in the administrative proceeding should not be given preclusive effect. Although the theory of recovery asserted in a prior litigation is one (1) of several relevant considerations in determining whether an issue is to be precluded, it is clear here that the same issue of fact, i.e., the propriety of American Honda's rejection of Willis Honda's application and award of the dealership to All Star, was fully and fairly litigated in state court. Furthermore, plaintiffs have failed to show that that they were deprived of a fair opportunity to litigate the issue due to limitations on discovery in the administrative proceeding, as they have failed to allege that there was relevant evidence that they were prevented from obtaining through discovery or that more extensive discovery would have revealed the RICO defendants' alleged fraud. The ALJ held "[n]umerous pre-hearing conferences . . . to address discovery related issues and motions" and "12 evidentiary hearings," including "over 200 exhibits and 10 witnesses." [Docket Entry No. 1-2] at 2. There is no indication that these extensive proceedings lacked sufficient "procedural and substantive safeguards," Winters, 212 N.J. at 87, or that giving the proceedings preclusive effect would be

22

"'unfair or unexpected,'" Sanderson v. N.Y. State Elec. & Gas Corp., No. 11-CV-6096T, 2013

WL 1221930, at *7 (W.D.N.Y. Mar. 25, 2013) (quoting Taylor v. Brentwood Union Free Sch.

Dist., 908 F. Supp. 1165, 1178 (E.D.N.Y. 1995)).

The RICO defendants' alleged perjury does not preclude the application of collateral

estoppel to plaintiffs' claims against American Honda. The proper procedure for seeking relief

from an order procured by fraud is to petition the rendering court to vacate the judgment. See,

e.g., Gaskill v. Abex Corp., No. L-1772-08, 2012 WL 6115717, at *5 (N.J. App. Div. Dec. 11,

2012) ("The concept of fraud upon the court is most often invoked as a ground for vacating a

judgment alleged to have been procured by perjured testimony or the submission of falsified

evidence[, and New Jersey Rule of Court] 4:50-1(c) expressly authorizes a court to vacate a

judgment procured through fraud . . . .") (citations omitted); Shammas v. Shammas, 9 N.J. 321,

330 (1952) ("Perjured testimony that warrants disturbance of a final judgment must be shown by

clear, convincing and satisfactory evidence to have been, not false merely, but to have been

willfully and purposefully falsely given, and to have been material to the issue tried . . . .");

Goddard, 2006 WL 842925, at *4 n.4 ("Plaintiff may also be able to state a cause of action for

fraud upon the court. However, this claim must be made in the state court that issued the

judgment . . . .").[11] As long as the state-court judgment remains in effect, it must be given

preclusive effect, and the Court will not speculate as to whether the state court would vacate the

judgment in light of the RICO defendants' alleged perjury.

---

[11]    Although Rule 4:50-2 of the New Jersey Rules of Court "provides that a motion for relief
from a judgment premised upon fraud must be made within one year from entry of the
judgment," Rule 4:50-3 "removes from that limitations period a judgment obtained through fraud
upon the court.  Relief under this rule may be obtained without limitation as to time." Tara
Enters., Inc. v. Daribar Mgmt. Corp., 848 A.2d 27, 31 (N.J. Super. Ct. App. Div. 2004) (internal
quotation marks omitted) (citing Von Pein v. Von Pein, 632 A.2d 830 (N.J. Super. Ct. App. Div.
1993); Hyland v. Kirkman, 385 A.2d 284 (N.J. Super. Ct. Ch. Div. 1978)).

23

Therefore, plaintiffs' claims against American Honda are barred by the doctrine of collateral estoppel and are dismissed.

IV.  Conclusion

For the foregoing reasons, the motions of American Honda [Docket Entry No. 45] and the RICO defendants [Docket Entry No. 50] to dismiss plaintiffs' complaint are GRANTED. Plaintiffs' claims against American Honda are barred by the doctrine of collateral estoppel and are dismissed with prejudice. Plaintiffs' federal RICO claim against the RICO defendants is dismissed with prejudice, and the remaining state-law claims against the RICO defendants are dismissed without prejudice. The Clerk of Court is respectfully directed to close this case.


**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 22, 2013
        Central Islip, New York